The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: July 13, 2026

**NO. S-1-SC-40449**

**STATE OF NEW MEXICO,**

Plaintiff-Respondent,

v.

**JAMES MORGAN,**

Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**George P. Eichwald, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
MJ Edge, Assistant Public Defender
Santa Fe, NM

for Petitioner

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Senior Solicitor General

for Respondent

**OPINION**

**VIGIL, Justice.**

{1} This case requires us to determine whether a police officer had reasonable suspicion to seize Defendant James Morgan. The district court ruled that the officer lacked reasonable suspicion and ordered suppression of the evidence of Defendant's crimes committed "subsequent to the unlawful seizure." The Court of Appeals "decline[d] to address whether the [officer] had reasonable suspicion" and then held, under the new crime exception, that evidence of Defendant's subsequent crimes was admissible. *State v. Morgan*, 2024-NMCA-057, ¶¶ 1, 6, 553 P.3d 501. We vacate the Court of Appeals opinion and hold that the officer had reasonable suspicion Defendant had committed or was committing a crime. Therefore, it is not necessary to address the parties' arguments regarding the new crime exception.

## I.  BACKGROUND

### A.  Facts

{2} Around midnight on July 19, 2020, dispatch called out Sergeant Carlos Railey of the Rio Rancho Police Department to a reported fight at Pine Court, a small cul-de-sac in Rio Rancho, New Mexico. As he drove to Pine Court, dispatch notified him that the caller said the fighting had stopped. The caller also reported that there had been a party going on all day at the house at the end of the cul-de-sac and that

there was laughing and dancing in the street. Sergeant Railey testified that he was concerned, first, "that there was a report of a fight in progress with somebody being dragged through a street, that's pretty descriptive; so I believe[d] that the anonymous party had witnessed that. The second issue was, there was a mention of a party that had been going on all day, so there was a concern, in my head, that there was a possible noise ordinance violation as well." Sergeant Railey testified he was investigating an assault and a noise complaint.

{3}    When Sergeant Railey reached Pine Court, he parked his marked patrol car around the corner from the cul-de-sac. He did not use his lights or sirens. He testified, "As I exited my vehicle I hear a loud argument between what appears to be a male and female; the male voice is noticeably louder and I could hear it from my location, which is around the corner." When Sergeant Railey came around the corner he saw four people in the cul-de-sac, later identified as Defendant, Jennifer Morgan, Defendant's friend Jose Gurrola, and a fourth individual who was never identified. Sergeant Railey testified there was sufficient light to clearly see Defendant from some distance. Sergeant Railey was concerned because "there was a male yelling very loudly at a female; there was a friend near him that appeared to be kind of holding on to him. I wasn't sure if he was trying to restrain this male or not, but my concern was that there was a domestic dispute going on and that may have resulted

in the call of somebody dragged through the street of a fight in progress." Sergeant Railey testified that based on what dispatch reported and his own observations, he had reasonable suspicion to detain Defendant to investigate a noise violation, disorderly conduct, or possible assault. Sergeant Railey's lapel footage was provided to the district court. The footage confirmed that Sergeant Railey could hear the argument from around the corner and that there was sufficient light from the houses to see the group from some distance.

{4} Sergeant Railey approached the group without announcing that he was a police officer because he wanted to hear what the argument was about. He was wearing a black Covid mask and his navy police uniform with a metallic badge of office, metallic gold name plate, blue and yellow shoulder patch, and yellow shoulder stripes. As Sergeant Railey approached the group, he made eye contact with Gurrola who said, "Hey can I help you?" Sergeant Railey replied, "yeah." Defendant said to Sergeant Railey, "I'll leave, I'll leave, I'll leave," but Sergeant Railey told him, "Hang out, sit on the ground." Gurrola pulled Defendant away from Sergeant Railey, then both turned and ran. Sergeant Railey testified he chased after them, yelled "stop" multiple times, and then grabbed Defendant by the right wrist. When Sergeant Railey grabbed Defendant, Defendant fell. Sergeant Railey lost hold of

Defendant's wrist, and as he bent over to try to regain control of Defendant, Gurrola tackled him.

{5}    While being taken to the ground, Sergeant Railey yelled "police" or "police department" multiple times and managed to radio for back-up. Gurrola sat on Sergeant Railey's chest and held down the Sergeant's right arm to prevent him from reaching his sidearm. Defendant in turn held down Sergeant Railey's left arm. Sergeant Railey testified that Jennifer Morgan ripped Sergeant Railey's badge from his uniform, grabbed his radio from his hand, and yelled "you better hope your backup comes." Defendant and Gurrola held down Sergeant Railey for about a minute and a half until backup arrived and Defendant was arrested.

**B.    Procedural History**

{6}    Defendant was indicted by a grand jury for aggravated battery upon a peace officer, false imprisonment, criminal damage to property (over $1000), and criminal damage to property (under $1000). Jose Gurrola and Jennifer Morgan were also charged with the same four crimes. In district court, Defendant filed a motion to suppress all evidence of crimes committed after Sergeant Railey seized Defendant by grabbing his wrist. Defendant argued that Sergeant Railey lacked reasonable suspicion to seize him because "Sergeant Railey did not identify himself, was wearing a dark uniform and a mask, did not ask any questions or undertake any

investigation," and in addition, "did not have a description of individuals to look for, [and] the call out had changed from a fight to . . . a possible noise violation." The State responded that the motion should be denied because, based on the information from dispatch and his observations, Sergeant Railey "had reasonable suspicion that a crime was being committed." The State also argued in a surreply that assuming there was no reasonable suspicion because Sergeant Railey did not identify himself as a police officer until he seized Defendant, evidence of Defendant's crimes was nevertheless admissible under the new crime exception.

{7} After hearing Sergeant Railey's testimony and argument from the parties, the district court orally found there was no reasonable suspicion because the street was dark and Sergeant Railey did not announce himself. The district court's written order granting Defendant's motion to suppress states that (1) Sergeant Railey did not have reasonable suspicion, (2) Defendant was unlawfully seized, and (3) "all evidence subsequent to the unlawful seizure is suppressed." In accordance, after granting the motion to suppress, the district court then dismissed the case.

{8} The State appealed. In a two-to-one decision, the Court of Appeals reversed the district court. *Morgan*, 2024-NMCA-057, ¶ 24. The majority reasoned that under the new crime exception, Sergeant Railey's identification as law enforcement was an intervening circumstance which sufficiently attenuated the seizure of Defendant

from Defendant's subsequent battery upon a peace officer. *Id.* ¶ 18. The majority concluded that "Defendant's actions following the seizure constituted a new crime, and thus the district court erred in ordering suppression." *Id.* ¶ 6. The dissent argued the seizure was not attenuated from the new crimes, so the evidence should be suppressed. *Id.* ¶ 35-36 (Yohalem, J., dissenting). The majority "decline[d] to address whether the sergeant had reasonable suspicion to seize Defendant as, in this case, the result is the same." *Id.* ¶ 6.

{9} We granted certiorari to determine whether the new crime exception applies in this case.

**II. DISCUSSION**

{10} As a preliminary matter, we address the Court of Appeals decision to reach analysis of the new crimes exception without determining the existence of reasonable suspicion, stating "in this case, the result is the same." *Morgan*, 2024-NMCA-057, ¶ 6. This decision was error.

{11} At the outset of its discussion, the Court of Appeals correctly framed the issues as, first, whether Sergeant Railey had reasonable suspicion regarding Defendant and, second, "if the sergeant lacked reasonable suspicion, whether Defendant's actions following the seizure amounted to 'new crimes.'" *Id.* Under this framing, it necessarily follows that the new crime exception would only apply in the absence of

reasonable suspicion. This is correct, because the new crime exception is only applicable when a seizure is unconstitutional. *See State v. Tapia*, 2018-NMSC-017, ¶¶ 14-15, 414 P.3d 332 (explaining that the attenuation doctrine is an exception to the exclusionary rule for a violation of the Fourth Amendment and applies "'when the connection between unconstitutional police conduct and the evidence is remote'" (quoting *Utah v. Strieff*, 579 U.S. 232, 238 (2016))). Thus, the Court of Appeals was required to review the district court's ruling that Sergeant Railey lacked reasonable suspicion before considering whether the new crime exception applies. We therefore begin our analysis by determining whether Sergeant Railey had reasonable suspicion to detain Defendant.

**A.     Standard of Review**

{12}     A suppression ruling presents a mixed question of law and fact. *See State v. Garcia*, 2009-NMSC-046, ¶ 9, 147 N.M. 134, 217 P.3d 1032. We first review factual determinations for substantial evidence, "viewing the facts in the manner most favorable to the prevailing party." *Id.* We then review questions of reasonable suspicion "de novo by looking at the totality of the circumstances to determine whether the detention was justified." *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). "All reasonable inferences in support of the district court's decision will be indulged in,

and all inferences or evidence to the contrary will be disregarded." *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (text only) [1] (citation omitted).

**B.     Investigatory Stop**

{13}     Defendant claims that under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution, Sergeant Railey's seizure of Defendant was unconstitutional, so evidence of possible subsequent crimes should be suppressed. Although Defendant cites both the United States Constitution and the New Mexico Constitution, he does not argue that the state constitution provides greater protection against unreasonable search and seizure than the federal constitution. Nor does he argue that we should adopt a constitutional analysis other than the interstitial approach. *See State v. Beauchesne*, 868 A.2d 972, 975, 978-84 (N.H. 2005) (using the primacy test to construe the state

---

[1]"(Text only)" indicates the omission of nonessential punctuation marks—including internal quotation marks, ellipses, and brackets—that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

constitution and concluding the state constitution was violated).[2] Because Defendant does not argue that the New Mexico Constitution provides greater protection than the Fourth Amendment, under either approach, jurisprudence under the Fourth Amendment controls. *State v. Harbison*, 2007-NMSC-016, ¶ 16 & n.3, 141 N.M. 392, 156 P.3d 30.

{14}     The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Reasonableness is determined "by balancing the need to search (or seize) against the invasion which the search (or seizure) entails." *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (internal quotation marks and citation omitted). In *Terry*, the United States Supreme Court held that brief investigatory stops are reasonable if the officer's action is (1) "justified at its inception" and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20; *see also State v. Funderburg*, 2008-NMSC-026, ¶ 13, 144 N.M. 37, 183 P.3d 922. An officer's search or seizure is justified at its inception if the officer has reasonable

---

[2]We have observed that the interstitial approach is not law: it is merely a tool for interpreting our state constitution. *Grisham v. Van Soelen*, 2023-NMSC-027, ¶ 19 n.7, 539 P.3d 272 (*citing Garcia*, 2009-NMSC-046, ¶ 56 (Bosson, J., specially concurring)). We repeat our invitation for parties to provide "thoughtful and reasoned argument in the future addressing whether the interstitial approach is the proper method to ensure the people of New Mexico the protections promised by their constitution." *Id.*

suspicion. *See Terry*, 392 U.S. at 21-22; *see also Funderburg*, 2008-NMSC-026, ¶ 13. An officer has "reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted); *see also Terry*, 392 U.S at 21-22. We look to the totality of the circumstances to determine if the stop is reasonable. *State v. Vandenberg*, 2003-NMSC-030, ¶ 19, 134 N.M. 566, 81 P.3d 19.

{15} Evidence "obtained in a manner that runs afoul of the Fourth Amendment" must be suppressed. *State v. Santiago*, 2010-NMSC-018, ¶ 10, 148 N.M. 144, 231 P.3d 600. This exclusionary rule applies to both "primary evidence obtained as a direct result of an illegal search or seizure and evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." *Tapia*, 2018-NMSC-017, ¶ 13 (text only) (citation omitted).

{16} The district court excluded evidence of Defendant's crimes subsequent to his seizure because it believed, based on the fact that the cul-de-sac was dark and Sergeant Railey did not announce himself, that Sergeant Railey lacked reasonable suspicion. However, this was legal error. Under the law, to have reasonable suspicion an officer must be "aware of specific articulable facts" which would

reasonably lead the officer to believe a crime had occurred or was occurring. *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted). Officer identification is irrelevant to whether an officer reasonably believes a crime was committed. *Id.* Sergeant Railey's failure to announce himself did not per se negate reasonable suspicion. *See State v. Hernandez*, 2016-NMCA-008, ¶ 20, 364 P.3d 313 (holding that two undercover agents had reasonable suspicion based on prior undercover drug buys).

{17}     Defendant provides a number of arguments as to why Sergeant Railey did not have reasonable suspicion. He asserts that Sergeant Railey's testimony was contradictory; the district court did not believe the Sergeant's testimony; Sergeant Railey did not witness a crime or was mistaken as to law or fact; and Sergeant Railey was not aware of enough specific articulable facts to justify his detention of Defendant.

{18}     We reject Defendant's arguments. Sergeant Railey consistently testified during direct and cross-examination that based on information from dispatch and his own observations, he believed he had reasonable suspicion that Defendant had committed an assault or was exhibiting disorderly conduct and violating the unreasonable noise municipal ordinance. His uncontradicted testimony was that dispatch reported a fight took place in the small cul-de-sac, and that someone was

being dragged through the street. Additionally, dispatch told Sergeant Railey a loud party was ongoing at the house at the end of the cul-de-sac and the partygoers had been in the street singing and dancing. Sergeant Railey also testified as to his personal observations. He saw Defendant in the cul-de-sac shortly after the reported fight. Defendant was in a very loud verbal altercation and appeared to have been restrained by a friend. Video evidence from Sergeant Railey's lapel camera corroborated this testimony. The facts from the Sergeant's observations and what he was told by dispatch are enough for a reasonable person to believe an assault, disorderly conduct, or unreasonable noise had occurred or was occurring.

{19} Accordingly, we hold that Sergeant Railey had reasonable suspicion to initiate an investigatory stop. *See State v. Wing*, 2022-NMCA-016, ¶ 15, 505 P.3d 905 (holding that the defendant's proximity to the area known for certain crimes, late at night, in conjunction with the surrounding circumstances, provided the officer with reasonable suspicion).

**C.    Seizure of the Defendant**

{20} Defendant argues his seizure was unreasonable in violation of the Fourth Amendment. A seizure is the use of physical force or show of authority by an officer which causes a defendant to submit to that authority. *See Terry*, 392 U.S. at 19; *California v. Hodari D.*, 499 U.S. 621, 626 (1991). "[T]here is no seizure without

actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Brendlin v. California*, 551 U.S. 249, 254 (2007).

{21}  In this case, when Sergeant Railey approached Defendant and Gurrola he told them to stay and "hang out." Instead, they turned and ran. Thus, they were not seized when the Sergeant first tried to detain them using his words because they did not submit to the Sergeant Railey's authority. *See id.* Not until Sergeant Railey grabbed Defendant's wrist was Defendant seized for purposes of the Fourth Amendment.

{22}  When Sergeant Railey seized Defendant by grabbing Defendant's wrist, he had reasonable suspicion to detain Defendant. He was aware of facts reported in the assault and noise complaint which, when combined with his observations of a verbal fight, disorderly conduct, and unreasonable noise, gave him reasonable suspicion that a crime was being committed or had been committed. When Sergeant Railey approached Defendant, Defendant fled, furthering the Sergeant's reasonable suspicion. *See Harbison*, 2007-NMSC-016, ¶¶ 16-20 (holding that flight may be considered in determining reasonable suspicion where the officer did not unlawfully provoke the flight and following *Illinois v. Wardlow*, 528 U.S. 119 (2000) (applying the Fourth Amendment)). When the Sergeant seized Defendant's wrist, Defendant was fleeing from law enforcement, and the Sergeant had reasonable suspicion, making the seizure "reasonably related in scope to the circumstances which justified

the interference" and, therefore, constitutional. *See Terry*, 392 U.S. at 20.

## III.   CONCLUSION

{23}   We hold that Sergeant Railey had reasonable suspicion when he seized Defendant and that Defendant's motion to suppress should be denied; consequently, we do not address the parties' arguments regarding the new crime exception. We therefore vacate the Courts of Appeals opinion and remand the case to the district court for further proceedings consistent with this opinion.

{24}   **IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Justice**

**WE CONCUR:**

_____

**JULIE J. VARGAS, Chief Justice**

_____

**C. SHANNON BACON, Justice**

_____

**DAVID K. THOMSON, Justice**

_____

**BRIANA H. ZAMORA, Justice**